UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

MICHAEL JOSEPH DUNCAN,
VICKI ANITA DUNCAN,

        Debtors.
_____/

Case No. 10-72730-wsd
Chapter 7
Hon. Walter Shapero

**OPINION REGARDING THE TRUSTEE'S
MOTION TO DISMISS CASE UNDER 11 U.S.C. § 707(b)(3)**

The matter before the Court is the United States Trustee's Motion to Dismiss under 11 U.S.C. § 707(b)(3). The Court held an evidentiary hearing and took the matter under advisement.

**I. BACKGROUND**

Michael and Vicki Duncan ("Debtors") filed their Chapter 7 bankruptcy petition on October 26, 2010. The United States Trustee ("UST") filed a Motion to Dismiss their case on January 25, 2011 (Docket No. 13). Debtors oppose the Motion. An evidentiary hearing was held, as a result of which the Court finds the following relevant facts:

1. Debtors' Schedule I shows their gross monthly income emanating solely from Michael's employment as a supervisor with Marathon Petroleum Company, LLC, to be $7,570.01, with a net monthly income of $5,137.26 after deductions for payroll taxes, insurance, and a 401K plan contribution of $529.90 (7% of gross income);

2. Michael's employer also matches his monthly 401 K contribution; Debtors' Schedule B indicates the value of his 401K plan as of filing was $5,528.50, and Debtor testified that its balance had become approximately $12,747.00 as of February 23, 2011;

3. Michael was born on February 26, 1969; he and his wife, who is not employed, have two children living with them, ages nine and ten; Michael also has three other children, ages 16 and 18 from a previous marriage, who have lived with their mother since various dates in 2009, plus another child age 22 who lives on her own; He does not provide

1

regular support for the children not living with him, though from time to time does provide them with money or other things, the amount of which was not specifically quantified but appears to be relatively insubstantial;

4. Debtors' Schedule J shows a monthly expense of $400.00 for cigarettes, the evidence indicating they each smoke about one pack per day, but are engaging in some efforts to reduce or eliminate the smoking habit;

5. Debtors' Schedules A and D, with regard to their residence, indicate its value at $70,000.00, with a first mortgage balance of $85,748.00 and a second mortgage balance of $26,825.00;

6. Debtors' Schedule E lists an unsecured priority claim of the Internal Revenue Service for 2009 income taxes of $7,916.00, but since the filing, that debt no longer exists; Debtors' Schedule F lists total unsecured non-priority debt of $43,014.75;

7. When Michael Duncan reaches age 62 or thereabouts, he will become entitled to a monthly pension of some $200.00 to $300.00 arising from previous employment or work while a member of the Teamsters Union;

8. Debtors' Schedule J lists total monthly expenses of $5,116.30, including (a) the indicated cigarette expense, (b) installment payments of $271.29 on the indicated second mortgage on the residence; and (c) $280.00 being paid monthly with reference to "06 Harley Davison (Flagstar Bank)" (there is no reference in Schedule D to any secured Harley Davison debt, and neither their Schedules B nor G indicate ownership or lease of any motorcycle);

9. Schedule J lists medical expenses of $275.00 per month; The evidence indicates that Debtors' medical insurance plan provides for either a 20% or 40% annual co-pay until such reaches $5,400.00, after which they are fully covered; The evidence also indicates that Vicki will shortly be having surgery requiring convalescence (and the need for essentially full time additional help for a few weeks), and there will likely be some unusually high medical or related expenses associated with that, possibly over and above what is shown on Schedule J, but only for some limited period of time.

## II. DISCUSSION

Authority to dismiss a case under Chapter 7 is derived from 11 U.S.C. § 707(b)(1), which provides, in part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1). In those cases where the presumption of abuse does not arise, as here, or is otherwise rebutted, and where bad faith is not a factor, the Court is directed to consider the totality of the circumstances in determining whether dismissal for abuse is warranted. 11 U.S.C. § 707(b)(3)(B). The UST bears the burden of establishing by a preponderance of the evidence that the case should be dismissed as an abuse under § 707(b)(3). *In re Beckerman*, 381 B.R. 841, 844 (Bankr. E.D. Mich. 2008).

### A. Ability to Pay

In determining whether this case constitutes an "abuse" under § 707(b)(3), the Court must examine the totality of the circumstances and determine whether the Debtors are "honest" and "needy". *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Behlke*, 358 F.3d 429, 434 (6th Cir. 2004). "'[H]onest,' in the sense that [Debtors'] relationship with [their] creditors has been marked by essentially honorable and undeceptive dealings, and […] 'needy' in the sense that [their] financial predicament warrants the discharge of [their] debts in exchange for liquidation of [their] assets." *Krohn*, 886 F.2d at 126.

There is no allegation or indication that Debtors have been anything other than honest in their relationship with their creditors, and therefore the inquiry is limited solely to whether Debtors are "needy" of a chapter 7 discharge. In making determinations as to neediness, courts have looked to the following non-exclusive factors:

> (a) whether the Debtor has the ability to repay his debts out of future earnings; (b) whether the Debtor enjoys a stable source of future income; (c) whether the Debtor is eligible for chapter 13 relief; (d) whether there are state remedies with the potential to ease the Debtor's financial predicament; (e) whether relief may be obtained through private negotiations with creditors; and (f) whether expenses can be reduced significantly without depriving the Debtor of adequate food, clothing, shelter and other necessities.

3

*In re Beckerman*, 381 B.R. at 845 (citing *In re Krohn*, 886 F. 2d at 126-27).

In this case, the Debtor enjoys a stable source of future income and is eligible for Chapter 13 relief. The factor most applicable to the Court's analysis in this case is (f), whether the Debtors' expenses can be significantly reduced without depriving them of adequate food, clothing, shelter and other necessities.

In its Motion to Dismiss, the UST argues that elimination of only the 401K contribution of some $530.00 for a 60 month period (the required length of a Chapter 13 plan) would produce payments, net of taxes, in excess of 50% of the unsecured debt in this case. The UST further argues that when you combine that possibility with the clear ability to strip the second mortgage on the home in a Chapter 13 setting, thus freeing for payment to unsecured creditors of an additional $271.29 per month, an even stronger case for a finding of abuse is present. The UST argues that is so particularly in light of the fact that Debtors' would become the recipients of an additional small Teamsters Pension at some point. The UST goes on to argue that the Court should also consider the fact that Debtors pay $400.00 per month for cigarettes, as part of the total circumstances to be considered in these kind of inquiries. Debtors respond by saying that (1) they will need the 401K plan for retirement purposes; (2) it is not mandated that one who has the ability to strip a junior mortgage in a Chapter 13 case must do so; (3) they will have increased medical expenses that will materially change their financial situation, which is more than enough to outweigh other considerations raised by the UST; and (4) the Court should not be in posture of finding abuse based on requiring changes in life style or habits involving smoking and the like.

    i. <u>401K Contributions</u>

This Court has previously examined the issue of whether voluntary contributions to a retirement plan are per se unnecessary expenses for purposes of determining disposable income in a hypothetical Chapter 13 plan, and found such contributions not to be per se unreasonable, but they must be examined on a case-by-case basis. *In re Beckerman*, 381 B.R. at 848. In determining whether such a contribution is necessary to the maintenance and support of a debtor, the Court looks to factors such as: (1) amount of any existing retirement savings; (2) the debtor's

4

10-72730-wsd    Doc 20    Filed 08/26/11    Entered 08/26/11 14:47:04    Page 4 of 8

age and time left until retirement; (3) annual income and overall budget; (4) amount of monthly contributions; and (5) needs of any dependents. *Id*.

Debtor Michael is 42 years of age. Assuming for purposes of discussion that he will retire in 20 years, considering only his own monthly 401K contribution, one does not need to be a mathematician to conclude, excluding any employer matching contributions, earnings, or accretions in value, that such would amount to some $127,000.00. With the indicated employer contributions, it would amount to double that, or some $254,000, without taking into account accruing earnings, accretions in value, or the current value of $12,000.00. If one were to recalculate that figure on the basis of 15 years, rather than 20 years (with there being no debtor or employer contributions during the period of a Chapter 13 plan), the total of Debtor contributions will have been $95,000.00, and with the match the amount would be double that or $180,000.00. To that one needs to add at least the $200.00 to $300.00 per month Teamster Pension, as well as the possibility of social security payments. The point here is that, even if Debtor was in a Chapter 13 plan, his age and circumstances are such that, absent any contributions during the life of the plan, those accounts would still accrue a substantial amount to help see the Debtors thru their retirement years. Looking at it differently, assume for purposes of discussion that Debtors reduced their 401K contribution to one half of its present amount, that in and of itself would provide for $265.00 per month to could be paid toward a Chapter 13 plan, which would roughly produce a dividend to unsecured creditors of some 25% to 33% or so of the unsecured debt.

Under the totality of the circumstances, the Court finds that the 401K contribution in this case is unnecessary and should not be deducted when determining disposable income for the fund of a hypothetical Chapter 13 plan. In light of the above, the Court finds that the $529.90 401K contribution should be included in disposable income available to fund a hypothetical plan. Eliminating that monthly expense alone from Debtors' budget would produce a significant and meaningful distribution to unsecured creditors in a Chapter 13 case, as such, the Court concludes that Debtors are not "needy" of a Chapter 7 discharge.

ii. Possibility of Lien Stripping in a Chapter 13, and Cigarette Expenses and Other Expenses

The UST further argues that (1) Debtors' second mortgage could be stripped in a Chapter 13 case, which would allow Debtors to pay another $271.29 toward a Chapter 13 plan, and (2) Debtors' $400 monthly cigarette expense is unreasonable and unnecessary. Given the Court's conclusion articulated above (which in and of itself is a sufficient basis for the Court's conclusion), the Court need not discuss these two arguments at length, but they are worth commenting on. The possibility of lien stripping in Chapter 13 to some extent reinforces the Court's decision in this case. If Debtors are able to strip their second mortgage in a Chapter 13 case (and it is not clear at this point whether that is an actual possibility given the fact that the record does not include an appraisal of Debtors' home) that would allow Debtors' to contribute significant additional funds toward a Chapter 13 plan. Further reinforcing the Court's conclusion is that Debtors' listed expenses for cigarettes ($400) and recreation ($100) appear somewhat high. However, the Court will not engage in determining just how much Debtors should spend on each expense category, rather it takes the approach articulated in *In re Mars*, 340 B.R. 844, 850 (Bankr. W.D. Mich. 2006), wherein the court explained:

> Too many courts have fretted over whether a debtor's budget should include an allowance for cigarettes or whether the debtor is driving too expensive of a car. Far more important is consideration of what is to be the fair division of a debtor's future income between his creditors and himself. A debtor should not be permitted to live extravagantly at his creditors' expense. However, it should be up to the debtor to decide how he spends his share once the appropriate allotment has been made. For example, a debtor should not be prohibited from smoking provided the debtor makes compensating adjustments elsewhere in his or her budget.

Finally, it should also be noted that Debtors anticipate that their medical expenses will likely increase due to the fact that Vicki will be having surgery requiring convalescence. Although some unusually high medical expenses associated with that surgery are likely, such are only for a limited period of time and it is unlikely that Debtors' increased medical expenses would significantly offset the above-indicated expenditures.

## III. CONCLUSION

The Court finds that, with adjustments to their expenses, the Debtors would be able to repay a significant portion of their unsecured debt. Based on these facts, granting Debtors relief under Chapter 7 of the Code would be an abuse of the provisions of that chapter given the totality of their financial circumstances. For the forgoing reasons, the UST's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3) is GRANTED. Debtors are allowed thirty days from the date of this opinion to file a motion to convert to a Chapter 13 case. If such is not done within that time period, the case will be dismissed by separate order of the court.

**Signed on August 26, 2011**

                                                **/s/ Walter Shapero**
                                                **Walter Shapero**
                                                **United States Bankruptcy Judge**